**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| DEXTER L. FRITZ, SR., | : | |
| Petitioner, | : | Case No. 3:09cv00249 |
| vs. | : | District Judge Thomas M. Rose |
| | | Magistrate Judge Sharon L. Ovington |
| ROBIN KNABB, Warden, | : | |
| Chillicothe Correctional Institution, | | |
| | : | |
| Respondent. | | |
| | : | |

**REPORT AND RECOMMENDATIONS[1]**

## I. Introduction

In 2007 a jury in state court found Dexter L. Fritz, Sr. guilty of trafficking crack cocaine, possession of crack cocaine, and "engaging in corrupt activities (Rico)." (Doc. #2, PageID at 28). He served his 2-year sentence in the Chillicothe Correctional Institution, was released in July 2009, and remains subject to a 3-year term of post-release control. Respondent acknowledges, consistent with *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968), that Fritz remains in state custody given his post-release-control status.

Fritz brings the present case pro se seeking a writ of habeas corpus under 28

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

U.S.C. §2254. He raises one ground for relief titled, "Rico [sic]," challenging his conviction on one count of engaging in a pattern of corrupt activity. *See* Doc. #8, Exhibits 8, 11. He uses the acronym "Rico" to refer to Ohio's version of RICO, the federal Racketeering Influence and Corrupt Organization Act, 18 U.S.C. §1961, et seq. Ohio's RICO statute appears in Ohio Rev. Code §2923.32 and is titled, "Engaging in a pattern of corrupt activities." *See*

> Fritz asserts:
>
> The R[ICO] does not apply to my case. My case is a low level drug deal. The predicate offense does not fit the elements in my case, nor does the money add up to 500 dollars. The RICO charge should be vacated, and taken off the record in my case, so not to burden me by being on my record hampering me from future work in order to make a living for my self.

(Doc. #2, PageID at #33).

## II. Factual Background

The Ohio Court of Appeals partly described the events underlying Fritz's convictions:

> The events giving rise to this matter began when Paul Hutsonpillar, a detective with the Perry Township Police Department assigned to the Montgomery County Sheriff's Department's organized crime unit, became involved in an investigation into drug trafficking led by Detective Thomas Engles of the Kettering Police Department. A confidential informant advised Engles that a black female by the street name of "T" was selling crack cocaine from Apartment 17, at 3217 Wilmington Pike. Engles selected Hutsonpillar to conduct a controlled buy, since it was unlikely he would be identified by any suspects as an officer, given that he was from another jurisdiction.
>
> Hutsonpillar testified that he identified himself as "Rob" and used

2

the "dropped name" of Barry when he called "T", explaining to the jury a dropped name is a name the confidential informant knew belonged to someone else who had purchased crack cocaine from "T" recently.  "T" was actually Latonya Messenger, and Hutsonpillar asked her the price to buy an eight ball of crack cocaine. Messenger quoted a price of $80.00, and Hutsonpillar obtained the money from Engles. Wearing a wire, Hutsonpillar went Messenger's apartment at approximately 6:30 p.m., on October 24, 2006. Messenger let Hutsonpillar into the apartment, and once inside he observed a younger white female and an older black male there. Messenger asked Hutsonpillar for $90.00, and Hutsonpillar replied that he brought the money they had agreed to, $80.00.  Hutsonpillar then sat on a couch while Messenger placed a phone call to "her dude," informing him that Hutsonpillar only had $80.00.  Approximately 10 minutes later, Fritz and another black male arrived at the apartment, and Messenger allowed them to enter.  The man accompanying Fritz was his cousin, Adrian. Fritz gave Messenger a baggie of what Hutsonpillar believed was crack cocaine, and in exchange, Messenger gave Fritz the $80.00 she had obtained from Hutsonpillar.  Messenger put the cocaine on a mirror, took a small piece for herself, and put the larger piece into the baggie for Hutsonpillar. Hutsonpillar then left the apartment with the drugs.

      Hutsonpillar testified that he later placed another call to Messenger to purchase more drugs, and on October 26, 2006, he again entered her apartment with money to purchase crack cocaine.  Messenger again placed a phone call, and 20 minutes later, Fritz again appeared at the apartment, this time alone. Fritz removed the crack cocaine from his right jacket pocket, and he gave it to Messenger in exchange for the money.  The drugs were not in a baggie. Messenger again took a small "pinch" of the drug for herself and gave the rest to Hutsonpillar, who placed the drugs into the cellophane from his cigarette pack.  According to Hutsonpillar, Fritz "got in my face," asking what kind of car Hutsonpillar drove.  When he told Fritz he drove a black truck, Fritz did not believe him until Messenger confirmed that the black truck was Hutsonpillar's.  Hutsonpillar then left with the drugs and again met with Engles.  According to Hutsonpillar, there was never any small talk between Fritz and Messenger, the transactions were "strictly business."

(Doc. #8, Exhibit 17, PageID #s 507-09).


**III.**     **Procedural Background**

3

A. **<u>Direct Appeal</u>**

Fritz filed a timely direct appeal in December 2007.  His appellate counsel raised four assignments of error:

I. The matter should be remanded for resentencing because the trial court, by castigating appellant for having exercised his right to a jury trial, indicated its bias and therefore denied appellant his constitutional right to a fair trial.

II. The matter should also be remanded for resentencing because there is at least one other error in sentencing and because the record is confusing.

III. The matter should also be remanded for resentencing because very recent U.S. Supreme Court precedent suggests that Ohio's sentencing scheme, where purveyors of crack cocaine are treated more punitively than sellers of the equal amount of powdered cocaine, cannot withstand constitutional scrutiny.

IV. The RICO conviction should be reversed because the evidence was insufficient to show that there was a drug trafficking "enterprise" separate and apart from the Rack[e]teering Activity.

(Doc. 8, Exh. 13).

The Ohio Court of Appeals issued its decision on August 29, 2008.  It held, in part, "Since the trial court created the appearance that it enhanced Fritz's sentence because Fritz refused to plead guilty, Fritz's first assignment of error is sustained, and the matter is remanded for resentencing before a different judge."  (Doc. #8, Exh. 13 at PageID #515).  The Ohio Court of Appeals rejected Fritz's remaining assignments of errors as meritless.

The Ohio Supreme Court's Rules of Practice afforded Fritz 45 days to challenge

the Ohio Court of Appeals' decision in the Ohio Supreme Court.  *See* Ohio S. Ct. R. II, §2.2(A)(1)(a).  On November 26, 2008, he filed a Motion for Delayed Appeal in the Ohio Supreme Court.  The Ohio Supreme Court denied Fritz's Motion in a conclusory Entry on February 11, 2009.  (Doc. #8, Exhs. 18-20).

> **B.** **Resentencing and Direct Appeal**

Meanwhile, back in the Court of Common Pleas, a judge resentenced Fritz to total sentence of 2 years (thus reducing it from his original sentence of 2½ years).  The judge also sentenced Fritz to a three-year term of supervised release (consistent with his original sentence).  (Doc. #8, Exh. 21).

Proceeding pro se, Fritz pursued a timely direct appeal of his resentencing raising the following assignments of error (verbatim, without correction):

> I. Separate sentences for twice the possession of, transportation of, the same drug.
>
> II. The verdict form and the trial court's subsequent verdict entry were inadequate to support a conviction for engaging in corrupt activity, trafficking in cocaine, and possession of crack cocaine as second degree, four degree, and fifth degree felonies.
>
> III. The court erred in convicting appellant of trafficking in crack cocaine, R.C. 2925.03(A)(1), instead of transporting, R.C. 2925.
>
> IV. Ineffective assistance of trial counsel.
>
> V. Trial court erred at resentencing by imposing court costs.

(Doc. #8, Exh. 23)(capitalization omitted).

On May 8 2009, the Ohio Court of Appeals sustained, in part, Fritz's first

5

assignment of error, explaining:

> In sum, Fritz was properly convicted of trafficking in a controlled substance under both R.C. 2925.03(A)(1) and R.C. 2925.03(A)(2) – the selling and transporting of the same controlled substance – as these offenses are not allied offenses.  Id at ¶38.[2]  The trial court erred, however, in failing to merge the convictions for possession and trafficking (transporting) in violation of R.C. 2923.03(A)(2).  The state concedes this error and requests in its brief that we vacate the conviction for possession.  Thus, Fritz's two convictions for possession under R.C. 2925.11(A), for which he received eighteen-month and twelve-month sentences, respectively, will be vacated.  We note, however, that correction of this error will not shorten the amount of prison time that Fritz must serve because he received a two-year sentence for engaging in corrupt activity, and all sentences were ordered to be served concurrently.

(Doc. #8, Exh. 26 at PageID #s 582-83)(footnote added).  The Ohio Court of Appeals overruled Fritz's remaining assignments of error.

Taking a procedurally unusual step, Fritz filed a notice of appeal apparently seeking to appeal an Order he thought the trial court had issued on May 8, 2009.  (Doc. #8, Exhs. 27, 28).  Addressing his notice of appeal, the Ohio Court of Appeals observed that the trial court's record did not contain an Order issued on May 8, 2009.  The Ohio Court of Appeals then explored the possibility that Fritz was attempting to appeal the decision it issued on May 8, 2009.  "To seek relief from this Court's judgment by way of appeal, Appellant's recourse is to file a notice of appeal in the Supreme Court of Ohio." (Doc. #8, Exh. 28 at PageID No. 590).  In this manner, the Ohio Court of Appeals dismissed Fritz's notice of appeal.  *Id*.

---

[2] citing *State v. Cabrales*, 118 Ohio St.3d 54 (2008).

6

Fritz did not seek review of the resentencing decision or his resulting appeal in the Ohio Supreme Court.

### C.     Other State Proceedings

On November 14, 2008, before his resentencing proceedings began, Fritz filed a pro se Motion for Re-Opening under Ohio R. App. P. 26(B). He raised four assignments of error (verbatim, without correction):

> I.     Appellant was denied his constitutional right to effective assistance of counsel.
>
> II.    The trial court erred by sentencing Appellant thrice the same charge of allied offense.
>
> III.   The verdict form and the trial courts subsequent verdict entry were inadequate to support a conviction for engaging in corrupt activity, trafficking in crack cocaine, and possession of crack cocaine as second degree, fourth degree, and fifth degree felonies.
>
> IV.    The courts erred in convicting Appellant of trafficking in crack cocaine R.C. 2925.03(A)(1) instead of transporting 2925.03(A)(2).

(Doc. #8, Exh. 29).

In December 2008, Fritz filed two motions in the Ohio Court of Appeals: a motion under Ohio R. App. P. 26(A), and a motion under Ohio R. App. P. 26(B). (Doc. 8, Exhs. 30, 31). He asserted in his Rule 26(A) Motion: "Trial court erred by convicting Appellant of the RICO charge." *Id*., Exh. 30. In his Rule 26(B) motion, Fritz asked the Court of Appeals to enter default judgment against the State of Ohio and to proceed to Judgment on his Rule 26(A) motion. *Id*., Exh. 31.

The Ohio Court of Appeals recognized that Fritz pointed to his appellate counsel's

ineffectiveness on direct appeal by his failure "to raise additional assignments of error." (Doc. #8, Exh. 32, PageID at 610).  The Ohio Court of Appeals denied Fritz's motions noting, in part, that he had failed to comply with Ohio R. App. P. 26(B)(2)(e).  His non-compliance consisted of his failure to submit either (1) a sworn statement of the basis for his claim or (2) "any parts of the record for our review."  (Doc. #8, Exh. 32 at PageID # 609-10).

Fritz also took another step towards obtaining relief by filing a Motion for Postconviction Relief in the trial court.  He argued, "Trial lawyer . . . told Defendant that the Judge will guarantee him probation for the charges upon what the P.S.I. have to say." (Doc. #8, Exh. 33).  Additional briefing followed, including Fritz's Amended Motion for Postconviction Relief.  (Doc. #8, Exhs. 34-37).  On December 16, 2008, the trial court overruled Fritz's motion as not well taken, without elaboration.  (Doc. #8, Exh. 38).

## IV.  Discussion

Respondent contends that Fritz has waived federal habeas review of his claim due to his procedural missteps in the Ohio courts.  Respondent further contends that Fritz's claim lacks merit when reviewed under the Antiterrorism and Effective Death Penalty Act.

### A.  Procedural Problems

Respondent contends that Fritz waived federal habeas review of his claim due to his failure to raise his claim in a timely direct appeal in the Ohio Supreme Court.

8

"A petitioner for a writ of habeas corpus must meet certain procedural requirements to permit review of his habeas claims by a federal court. The petitioner must first exhaust the remedies available in state court by fairly presenting his federal claims to the state courts; unexhausted claims will not be reviewed by the federal court." *Smith v. State of Ohio Dept. of Rehabilitation and Corrections*, 463 F.3d 426, 430-31 (6th Cir. 2006)(citing *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004) (other citation omitted). "When the petitioner has failed to present the grounds to the state courts and has exhausted his claims because no state remedy remains available, his grounds are procedurally defaulted." *Landrum v. Mitchell*, 625 F.3d 905, 918 (6th Cir. 2010)(citations omitted).

To obtain federal habeas review, the record must show that Fritz properly raised his federal constitutional claim in the Ohio courts pursuant to Ohio's adequate and independent procedural rules. *See Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004); *see also Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing, in part, *Coleman v. Thompson*, 501 U.S. 722, 749 (1991)); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). If Fritz did not follow Ohio's adequate and independent rules of procedure and the Ohio courts enforced those rules against him, then his procedural default might result in a waiver of one or more of his claims for purposes of federal habeas review. *See Bonilla*, 370 F.3d at 497; *see also Buell*, 274 F.3d at 349.

Four questions are considered when resolving whether a specific state procedure rule bars federal habeas review:

9

     1.     Whether there is a firmly established Ohio procedural rule with which the petitioner failed to comply;

     2.     Whether the Ohio court actually enforced the rule in sanctioning the petitioner's failure to comply;

     3.     Whether the petitioner's failure to comply with the state procedural rule constitutes an adequate and independent ground for barring federal habeas review; and

     4.     Whether cause exists to dispense with the procedural rule and whether the petitioner was actually prejudiced by the alleged constitutional error or whether a failure to conduct habeas review of a claim will result in a miscarriage of justice.

*See Deitz v. Money*, 391 F.3d 804, 808-09 (6th Cir. 2004)(and cases cited therein).

Fritz committed a procedural default by failing to raise his RICO claim – the only ground for relief raised in his habeas petition – in a timely direct appeal to the Ohio Supreme Court. This is the same procedural default identified in *Bonilla v. Hurley* where the United States Court of Appeals for the Sixth Circuit explained:

> Bonilla failed to file a timely notice of appeal with the Ohio Supreme Court and his motion for leave to file a delayed appeal was denied by that court apparently because he failed to demonstrate adequate reasons for his failure to file a timely notice of appeal or to otherwise comply with the provisions of Ohio Sup. Ct. R. II, Section 2(A)(4). Where a state court is entirely silent as to its reasons for denying requested relief, we assume that the state court would have enforced any applicable procedural bar. *Simpson v. Sparkman*, 94 F.3d 199 203 (6th Cir. 1996).

*Bonilla*, 370 F.3d at 497. Fritz's RICO claim is therefore barred by his procedural default unless he establishes cause and prejudice or unless he shows that a miscarriage or justice excuses his default. He has not done so.

Construing his habeas petition in his favor, the closest he comes to showing cause

10

appears in his assertion: "I instructed attorney to include predict offense, but he did not argue it for me. If he would of argued the predicate offense clearly possession of under 1 gram of crack does not guilty for the RICO." (Doc. #2, PageID at 33)(verbatim, without correction). Ineffective assistance of appellate counsel can serve as cause for a procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). But, before it may do so, the claim of ineffective assistance of appellate counsel must itself be fairly presented – i.e., not procedurally defaulted – to the Ohio courts. *See Edwards*, 529 U.S. at 451-52. If an ineffective assistance of counsel claim was itself procedurally defaulted, then it cannot excuse procedural defaults of other claims. *Id.*

      The Ohio Court of Appeals rejected Fritz's claim of ineffective assistance of appellate counsel by enforcing Ohio R. App. P. 26(B)(2)(e)'s procedural requirements. P. 26(B)(2)(e). (Doc. #8, Exh. 32 at PageID # 609-10). Specifically, the Ohio Court of Appeals found that Fritz had not complied with Rule 26(B)(2)(e) by failing to submit either (1) a sworn statement of the basis for his claim or (2) "any parts of the record for our review." *Id.* In this manner, the Ohio Court of Appeals enforced its procedural rule to dismiss Fritz's claim. Additionally, the present record in this case contains no indication that Rule 26(B)(2)(e) was not a firmly established Ohio procedural rule at the time the Ohio Court of Appeals applied it to Fritz or that the other circumstances described in *Dietz*, 391 F.3d at 808-09, help him to overcome his procedural default. And, Fritz also committed a procedural default by not timely challenging in the Ohio Supreme Court the decision by the Ohio Court of Appeals to deny his ineffective

11

assistance of appellate counsel claim.

For these reasons, Fritz's claim of ineffective assistance of appellate counsel does not constitute cause for the procedural default he committed when he failed to properly present his "RICO" claim on direct appeal. *See Edwards*, 529 U.S. at 451-52.

Lastly, for the reasons that follow, *infra*, §IV(B), a review of the record does not reveal the existence of prejudice or that a miscarriage of justice will occur absent federal habeas relief.

B. **AEDPA Review**[3]

The AEDPA significantly constricts the reach of the writ of habeas corpus "'with respect to claims adjudicated on the merits in state court.'" *Coomer v. Yukins*, 533 F.3d 477, 484 (6th Cir. 2008)(quoting *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495 (2000)). A merit-based, state-court decision does not warrant habeas relief under the AEDPA "unless the adjudication of the claim ... resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. §2254(d)(1); *see Washington v. Renico*, 455 F.3d 722, 728 (6th Cir. 2006). "The [AEDPA's] 'contrary to' clause is satisfied 'if the state court arrive[d] at a conclusion opposite to that reached by [the U.S. Supreme] Court on a question of law or if the state court decide[d] a case

---

[3] The Antiterrorism and Effective Death Penalty Act is codified in part at 28 U.S.C. §2254. *See* Pub.L. No. 104-132, 110 Stat. 1214.

12

differently than [the U.S. Supreme] Court has on a set of materially indistinguishable facts." *Villagarcia v. Warden*, 599 F.3d 529, 533 (6th Cir. 2010) (brackets added in *Villagarcia*) (quoting in part *Williams*, 529 U.S. at 413).

"Under [the AEDPA's] 'unreasonable application' clause..., a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Villagarcia*, 599 F.3d at 533 (quoting *Williams*, 529 U.S. at 411); *see Lovell v. Duffey*, 629 F.3d 587, 594 (6th Cir. 2011). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' which demands that state-court decisions be given the benefit of the doubt." *McKinney v. Ludwick*, 649 F.3d 484, 488 (6th Cir. 2011)(quoting in part *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)) (other citations omitted).

Construing Fritz's petition in his favor, he contends that the evidence was constitutionally insufficient to support his conviction of engaging in corrupt activity. *See* Doc. #2, PageID at 28, 33. He contends that his case involved a low-level drug offense that fails to constitute a predicate offense and thus fails to establish an essential element of his RICO conviction – or more correctly, his conviction of engaging in corrupt activities, a violation of Ohio Rev. Code §2923.32(A)(1). *See id.*; *see also* Doc. #8, Exhs. 3, 9.

To the extent Fritz asserts – as a pure matter of law, without reference to the facts or evidence in his case – that his underlying drug conviction offense was insufficient to

13

constitute a predicate act necessary to support his corrupt activities conviction, he advances a claim under Ohio law. Federal habeas relief is unavailable for violations of state law. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see Miller v. Francis*, 269 F.3d 609, 621 (6th Cir. 2001).

Fritz's petition can also be read as challenging the sufficiency of the evidence to support his engaging-in-corrupt-activities conviction. He thus asserts a violation of his rights under the Fourteenth Amendment to the United States Constitution. *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).

The Ohio Court of Appeals considered and rejected this claim on Fritz's direct appeal as follows:

> R.C. [Ohio Rev. Code §] 2923.32(A)(1) provides, "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity * * *." "'Enterprise' includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. 'Enterprise' includes illicit as well as licit enterprises." R.C. 2923.31(C). "'Pattern of corrupt activity' means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E). "'Corrupt activity' means engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in * * * " any violation of section 2925.03 of the Revised Code (trafficking in drugs). R. C. 2923.31(1)(2)(c).
>
> Fritz directs our attention to *United States v. Turkette* (1981), 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed. 2d 246, in which the United States Supreme Court determined, "In order to secure a conviction under RICO, the Government must prove both the existence of an 'enterprise' and the

14

connected 'pattern of racketeering activity.' The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. 18 U.S.C. § 1961(1) (1976 ed., Supp. III). The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved by the Government." *Id*., at 583.

Fritz notes, "at least six federal circuits have held that in order to prove its RICO case, the government must show some ascertainable organizational structure beyond whatever structure is required to engage in the pattern of corrupt activity," and he concedes, "five circuits have rejected any requirement that there be an 'ascertainable structure,' separate or otherwise, for an associated-in-fact enterprise."

We, along with the Fifth District Court of Appeals, have "resolved cases questioning the existence of an enterprise under the corrupt activity statute without reference to the federal requirements." *State v. Owen* (Feb. 19, 1999), Miami App. No. 98 CA 17 (finding "ample evidence in the record of the existence of an organizational structure beyond what was required for the participants to sell drugs," such that we "need not resolve the dissonance between those courts that require the enterprise to exist separate and apart from the corrupt activity and those that do not").

Fritz urges us "to adopt the view that the enterprise and the structure are separate entities that must be proven separately." The State responds that it must prove only "that a group of persons associated together for a common purpose of engaging in a course of conduct," to establish the existence of an enterprise, as defined in R.C. 2923.31(C), in reliance upon *State v. Humphrey*, Clark App. No. 2002 CA 30, 2003-Ohio-3401. In *Humphrey*, the defendant and his cousin participated in several specific incidents of drug-related activity involving the possession and sale of cocaine. In one incident, the defendant sold a kilo of cocaine to an

15

individual, offered the informant in the case one-fourth a kilo of cocaine, and gave his cousin an amount of cocaine. In another incident, while the defendant was out of town, the informant went to the home of the defendant's cousin and purchased an ounce of cocaine that the defendant had provided to the cousin to sell for him. In a third incident, having again provided his cousin with cocaine to sell, the defendant arranged a sale of five ounces to the informant. When the informant refused to deal with the cousin, the cousin had to return the cocaine to the defendant so the sale could be completed. We determined, the "State's evidence clearly demonstrates that a group of persons [the defendant and his cousin] associates together for the common purpose of engaging in a course of criminal conduct by distributing cocaine in the Springfield area. Moreover, this was an ongoing organization or entity whose members functioned as a continuing unit. This is sufficient to demonstrate the existence of an 'enterprise.' [citing *Turkette*]. Additionally, the 'pattern of corrupt activity' in this case was the series of corrupt acts involving specific incidents of illegal drug activity committed by the participants in the enterprise." *Id*., at ¶41.

Having examined the evidence admitted at trial in a light most favorable to the State, we conclude, as in *Humphrey*, that the evidence herein establishes that at least two persons, Fritz and Messenger, associated together for the common purpose of engaging in a course of criminal conduct by trafficking in drugs from Messenger's apartment. Again, as in *Humphrey*, this was an ongoing organization; Engles learned that drugs were being sold from the apartment, the officers learned the name of one customer and used it to allay any suspicions that Messenger might have had about dealing with a stranger, and Fritz, clearly the decision maker and supplier, and Messenger, the seller, functioned as a continuing unit, twice completing drug transactions with Hutsonpillar in the same fashion: a phone call from Messenger, the arrival of Fritz at the apartment, the controlled buy. Finally, as in *Humphrey*, this evidence is sufficient to establish the existence of an enterprise, and the requisite pattern of corrupt activity was the two sales of crack cocaine to Hutsonpillar, committed by Fritz and Messenger, the participants in the enterprise. For the foregoing reasons, any rational trier of fact could have found the essential elements of engaging in a pattern of corrupt activity were proven beyond a reasonable doubt. . . .

(Doc. #8, Exh. 17, PageID at 518-21).

In the present case, Fritz characterizes the evidence at his trial as showing only a

16

"low level drug deal," which was insufficient, he contends, to establish the predicate offenses needed to establish a violation of Ohio's RICO statute. *See* Doc. #2, PageID at 33. The evidence, however, was sufficient to prove that Fritz participated in more than a low-level drug deal.

As the Ohio Court of Appeals essentially explained, the predicate offenses under Ohio's RICO statute, Ohio Rev. Code § 2923.31(1)(2)(c), includes "trafficking in drugs" as described in Ohio Rev. Code §2925.03. Such trafficking offenses are prohibited under Ohio law as follows: (A) No person shall knowingly offer to do any of the following: (1) Sell or offer to sell a controlled substance; . . ." Ohio Rev. Code §2925.03. The Ohio Court of Appeals explained that the evidence established that Fritz committed this predicate offense on two occasions by selling Hutsonpillar crack cocaine on two separate occasions. (Doc. #8, Exh. 17, PageID at 521). As detailed above, *supra*, §II, detective Hutsonpillar testified during Fritz's trial that he Fritz participated in selling Hutsonpillar crack cocaine on two occasions. *See* Doc. #8, Exh. 17, PageID at 508-09. Under *Jackson v. Virginia*, Hutsonpillar's testimony must be accepted as true and construed in the prosecution's favor. *See Jackson*, 443 U.S. at 318-19. Consequently, the Ohio Court of Appeals identified sufficient evidence to establish that Fritz engaged in two predicate offenses that were sufficient to support his conviction of engaging in corrupt activities. And, in doing so, the Ohio Court of Appeals' decision was consistent with, and did not involve an unreasonable application of, clearly federal law established in *Jackson v. Virginia*. *Cf. Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (applying "double

deference" due under the AEDPA to a Michigan court's application of *Jackson v. Virginia*).

Accordingly, the AEDPA provides no federal habeas relief to Fritz.

V.      **Certificate of Appealability**

Before a petitioner may appeal a denial of his habeas petition, he must first obtain a certificate of appealability. 28 U.S.C. §2253(c)(1)(A). To obtain a certificate of appealability when a habeas petition is denied on the merits, the petitioner must make a substantial showing of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This is accomplished by showing that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack*, 529 U.S. at 484, 120 S.Ct. at 1604. If the District Court dismisses the petition on procedural grounds without reaching the merits of the constitutional claims, the petitioner must show that jurists of reason would find it debatable whether the District Court is correct in its procedural ruling. *Slack*, 529 U.S. at 484, 120 S.Ct. at 1604.

The conclusions reached in the instant Report are not debatable by jurists of reason and the case does not otherwise present issues adequate to deserve encouragement to Fritz to proceed further. Consequently, a certificate of appealability should not issue in this case.

## IT IS THEREFORE RECOMMENDED THAT:

1. Dexter L. Fritz, Sr.'s Petition for Writ of Habeas Corpus (Doc. #2) be DENIED and DISMISSED;

2. Fritz be denied leave to appeal *in forma pauperis* pursuant to 28 U.S.C. §1915(a) and also denied any requested certificate of appealability under 28 U.S.C. §2253(c); and,

3. The case be terminated on the docket of this Court.


March 23, 2012

                                                              s/Sharon L. Ovington
                                                                  Sharon L. Ovington
                                                           United States Magistrate Judge


## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).